# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANGELA KAY BARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 15-1058-JWL |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

## I.    Background

Plaintiff applied for DIB, alleging disability beginning March 1, 2011. (R. 12, 156). She exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the Administrative Law Judge (ALJ) erred in his residual functional capacity (RFC) assessment by erroneously weighing the medical opinion of a state agency psychologist, Dr. Blum, and

by erroneously discounting the opinion of an "other" medical care provider who treated

her, Ms. Reitz, APRN (Advanced Practice Registered Nurse).

The court's review is guided by the Act. <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052

(10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard. <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>accord,</u>

<u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S.

389, 401 (1971); <u>see also</u>, <u>Wall</u>, 561 F.3d at 1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804

(10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

<u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord,</u>

<u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v.</u>

<u>Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

3

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error as alleged by Plaintiff.  It addresses each alleged error in the order it was addressed in Plaintiff's Brief.

## II.    Evaluation of Dr. Blum's Medical Opinion

Plaintiff points out that the ALJ accorded "substantial weight" to Dr. Blum's opinion.  (Pl. Br. 9) (citing R. 23).  She argues that the ALJ "adopted Dr. Blum's opinion as the RFC" assessed, id., but failed to include the "difficulties with sustained concentration" opined by Dr. Blum in that RFC, and did not explain why he rejected this portion of Dr. Blum's opinion.  Id. at 10 (quoting R. 92).  The Commissioner's brief does not directly confront Plaintiff's argument, but she argues that in her view the ALJ provided an RFC assessment which adequately addressed Dr. Blum's opinion and is supported by the record evidence.  (Comm'r Br. 5-8).

As Plaintiff suggests, the ALJ accorded "substantial weight" to Dr. Blum's medical opinion.  (R. 23).  The ALJ explained that he had accorded that weight because "Dr. Blum's opinion is well-supported by the claimant's treatment records."  Id. Moreover, although the ALJ did not adopt Dr. Blum's opinion as the RFC he assessed, he did adopt Dr. Blum's opinion "regarding . . . mental functional abilities" in the RFC he assessed.  (R. 23).  Thus, the ALJ stated that Dr. Blum's opinion regarding mental functional abilities is included within the RFC he assessed.  Plaintiff asserts that it is not.

Dr. Blum opined that "Cl[ai]m[an]t appears capable of intermediate work. See MRFC [(Mental Residual Functional Capacity)]." (R. 88). And, as Plaintiff recognized, Dr. Blum noted that Plaintiff is "Moderately limited" in the ability to maintain attention and concentration for extended periods. (R. 92). In accordance with the instructions in the electronic form he completed, Dr. Blum recognized that his finding of a moderate limitation was not "the actual mental residual functional capacity assessment" (R. 91), and he provided a narrative explanation of Plaintiff's limitations in attention and concentration--"She may have difficulties with sustained concentration depending on her daily health forecast." (R. 92). It is this limitation (and more) that the ALJ stated was included in the RFC which the ALJ assessed. The court agrees with the ALJ's assertion in this regard, and finds no error--despite Plaintiff's arguments otherwise.

Because the ALJ did not reject any portion of Dr. Blum's medical opinion, he did not need to explain such an alleged rejection. Apparently relying on Dr. Blum's notation that Plaintiff was moderately limited, Plaintiff first argues that "the ALJ's RFC does not contain any limitation regarding [Ms.] Barnett's ability to sustain concentration." (Pl. Brief 11). However, as noted above, Dr. Blum's notation of moderate limitation is not the actual RFC assessment, and in his actual assessment he opined only that she may have such difficulties. Dr. Blum opined that Plaintiff is mentally capable of intermediate work, and in context his opinion does not preclude the ability to work. Plaintiff does not suggest what additional limitations are required by the possibility of having such

occasional difficulties in concentration.  Moreover, the ALJ explained his mental RFC

assessment:

> In sum, the evidence simply does not support any debilitating mental
> limitations.  Her symptoms appear to be generally well-controlled with
> medication and therapy.  While the claimant credibly continues to
> experience some limitations due to her depression and PTSD, these
> limitations have been accommodated within the above residual functional
> capacity assessment by restricting her to work of only simple-to-medium
> complexity.  In other words, she would likely do better to avoid work of a
> complex nature.  No further restrictions appear to be warranted based upon
> the record.

(R. 21-22).

In her next argument, Plaintiff implies that a limitation to work of simple-to-

medium complexity is merely a limitation in skill level, and has nothing to do with the

mental capacity for concentration or attention.  (Pl. Br. 11).  She argues therefore, that

there should have been some limitation in the ALJ's RFC which would account for

difficulty in concentration.  Id.  While it is true that mental functions "are not skills but

rather, general prerequisites for most work at any skill level," Chapo v. Astrue, 682 F.3d

1285, 1290 n.3 (10th Cir. 2012) (quoting Wayland v. Chater, Nos. 95-7029 and 95-7059,

1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996)), and that a particular skill level does not

necessarily equate to a functional capacity to concentrate, Johnson v. Colvin, 13-1464-

RDR, 2014 WL 4199291, *4 (D. Kan. Aug. 25, 2014); Webb v. Colvin, No. 13-4055-

SAC, 2014 WL 3853432, *7 (D. Kan. Aug. 6, 2014), the ALJ here did not merely assign

a skill level, but he found that Plaintiff's mental impairments, including her limitations in

understanding, memory, concentration, attention, and persistence as explained by Dr.

6

Blum permitted her to "perform work of simple-to-medium complexity," and he defined that limitation as encompassing a range of jobs requiring a specific vocational preparation level of 1 through 5--encompassing in that explanation, unskilled work as well as at least semi-skilled work.  (R. 17).  And, as quoted above, he explained how he arrived at that conclusion.

The cases cited by Plaintiff do not require a different conclusion.  In <u>Chapo</u>, the court found error because the claimant's physician opined that her "mental limitations significantly affected her ability to work in many different respects," but that the ALJ expressed "virtually none" of those complications to the vocational expert and had not provided a legitimate basis to reject the physician's opinion.  <u>Chapo</u>, 682 F.3d at 1290.  In a footnote, then, the <u>Chapo</u> court quoted <u>Wayland</u> as noted above.  <u>Id.</u> 682 F.3d at 1290 n.3.  In <u>Wayland</u>, the ALJ found that the claimant had mental impairments including depression and personality disorder and determined that these impairments caused moderate limitations in activities of daily living and in maintaining social functioning, and often caused deficiencies in concentration, persistence, or pace, but he determined that all of these limitations could be accommodated by a limitation to unskilled work, and he provided no other mental limitations in his hypothetical to the vocational expert.  <u>Wayland</u>, 1996 WL 50459 at *1.

Here, the record does not reveal mental limitations which were ignored by the ALJ.  Rather, as explained above, he specifically adopted Dr. Blum's mental limitations in his RFC assessment, and he explained how he had accommodated those limitations.

7

Plaintiff argues that his explanation does not adequately explain or accommodate Dr. Blum's finding that Plaintiff <u>may</u> intermittently (depending on her daily health forecast) have <u>difficulties</u> with sustained concentration.  However, the potential for difficulties does not equate to the certainty of difficulties, intermittent difficulties do not equate to difficulties preclusive of work, and <u>difficulties</u> with sustained concentration do not equate to an <u>inability</u> to sustain concentration.  Dr. Blum specifically opined that Plaintiff is capable of work, the ALJ explained his analysis that Plaintiff's mental limitations have been accommodated in his RFC assessment, and Plaintiff does not point to record evidence which precludes or negates that analysis.

In her final argument in this regard, Plaintiff points out that every "job requires the ability to maintain concentration and attention for extended periods, or for the approximately two-hour segments between arrival and first break, lunch, second break, and departure," and that "ability to maintain attention for extended periods of two-hour segments is critical for performing unskilled work."  (Pl. Br. 12) (citing POMS (Program Operations Manual System) DI § 22020.010).  She points out that a moderate limitation (such as Dr. Blum found with respect to Plaintiff's ability to maintain attention and concentration for extended periods) is not the same as no limitation, and argues that the ALJ therefore, failed adequately to explain Dr. Blum's opinion.  Once again, Plaintiff assumes that the potential for intermittent difficulties with sustained concentration, as opined by Dr. Blum, is equivalent to an <u>inability</u> to attend or concentrate for at least a two-hour period.  That is simply not the case, and Dr. Blum stated as much when he

opined that Plaintiff is capable of intermediate work.  Plaintiff has shown no error in the ALJ's evaluation of Dr. Blum's medical opinion.

### III.   Evaluation of Ms. Reitz's "Other Medical Source" Opinion

Plaintiff claims that Ms. Reitz's opinion "further supports a limitation in [Ms.] Barnett's ability to sustain concentration" (Pl. Brief 14), and argues that "Ms. Reitz's treatment notes do not indicate that all of [Ms.] Barnett's symptoms were responsive to medication," but she continued to have depression.  Id. at 15.  The Commissioner argues that the ALJ reasonably considered the opinion statement provided by Ms. Reitz, and that the record evidence supports his consideration.  (Comm'r Br. 9-11).

As the parties appear to agree, an Advance Practice Registered Nurse is an "other" medical source, not an "acceptable medical source" or a "treating source."  20 C.F.R. § 404.1513(d)(1).  Therefore, an APRN's opinion is not, strictly speaking, a "medical opinion," and is never entitled to controlling weight.

Nevertheless, recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources," the Commissioner promulgated SSR 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2015).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources"

under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, <u>along with the other relevant evidence in the file.</u>

<u>Id.</u>, Rulings, 330-31(emphasis added).

SSR 06-3p explains that where a treating source opinion is not given controlling weight, opinions of "other" medical sources will be evaluated using the regulatory factors for evaluating medical opinions. <u>Id.</u> at 331-32 (citing 20 C.F.R. § 404.1527). In the ruling, the Commissioner recognizes that "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." <u>Id.</u> at 332. The ruling explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." <u>Id.</u> at 333; <u>see also</u>, <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1300 (10th Cir. 2007) (remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

In his decision, the ALJ explained how he had evaluated Ms. Reitz's opinion. (R. 23). He explained that although Ms. Reitz is not an acceptable medical source, her opinion may still be considered. He explained five bases for his determination to give "little weight" to Ms. Reitz's opinion: She is not an acceptable medical source, she did not provide a basis for her opinion, her opinion of severe limitations is not supported by

her treatment notes or by the progress notes from Plaintiff's therapy sessions, and the opinion is not supported by other treating sources including Dr. Andrews.

Plaintiff does not frame a direct attack on any of the bases given by the ALJ for discounting Ms. Reitz's opinion--and she cannot because each basis is supported by record evidence.  Rather, she implies error, arguing that "Ms. Reitz's treatment notes do not indicate that <u>all</u> of [Ms.] Barnett's symptoms were responsive to medication."  (Pl. Br. 15) (emphasis added).  She then argues that Plaintiff continued to report depression after she began taking medication.  There are several problems with this argument.  First, the mere fact of depression is not in itself disabling.  The question is whether depression is of such severity as to preclude all work.  Plaintiff does not show such severity based upon evidence in this record.  And, the ALJ did not discount Ms. Reitz's opinion because her treatment notes showed <u>all</u> of Plaintiff's symptoms were responsive to medication.  Rather, he discounted Ms. Reitz's opinion, in part, because the severity alleged therein is "not supported by her own treatment notes," and he explained that those treatment notes "indicate that [Plaintiff's] symptoms are responsive to medication."  (R. 23).  As Plaintiff's argument tacitly admits, the treatment records show that her symptoms as a whole are responsive to medication, but she argues that nevertheless she still has depression.  However, Plaintiff's Brief also acknowledges that on at least one occasion Ms. Reitz's treatment notes stated that Plaintiff's "depression is better."  (R. 666) (cited in Pl. Br. at 15).  The ALJ also discounted Ms. Reitz's opinion because it is not supported by "the progress notes from the claimant's therapy sessions," which indicate that

11

Plaintiff's symptoms are "no more than moderate."  (R. 23) (emphasis added).  The therapy sessions to which the ALJ referred were provided by Plaintiff's therapist, Ms. Parks, and support his determination.  (R. 21).

Plaintiff's arguments (that the ALJ discounted part of Dr. Blum's opinion without explaining why, that Plaintiff's depression was not responsive to medication, and that Ms. Reitz's opinion supports greater limitations in the ability to sustain concentration), in the face of the ALJ's actual findings with regard to Dr. Blum's opinion, Ms. Reitz's opinion, and Ms. Parks's progress notes, are little more than an invitation for the court to reweigh the record evidence and substitute it's judgment for that of the Commissioner.  But, it is prohibited from doing so.  Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172. Plaintiff cites to no record evidence which precludes or negates the findings of the ALJ. The fact that the court could reasonably accord different weight to certain evidence than did the Commissioner does not prevent the Commissioner's findings from being supported by substantial evidence.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

Dated this 29th  day of December 2015, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**